UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MAHER RUSTOM,<br><br>                      Plaintiff,<br>     v.<br><br>NASER RUSTOM and the NORTH STAR<br>TRUST COMPANY, Trust Number 01-3775,<br>Corporation,<br><br>                      Defendants. | Case No. <u>1:18-cv-05278</u><br><br>Judge: Charles Norgle<br><br>Magistrate Judge: Shelia Finnegan |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

Now Comes Plaintiff, Dr. Maher Rustom ("Maher"), by and through his counsel, M James Salem, who submits this Memorandum of Law in opposition to Defendant Naser Rustom's ("Naser") Motion to Dismiss (Doc. 11), and states the following:

**INTRODUCTION**

1. On August 3, 2018, Plaintiff Maher filed a Verified Complaint in this action (Doc. 1). The main issue in the Complaint is whether the Plaintiff's Mother wanted an order of protection against him or whether the Defendant, who is Plaintiff's brother, falsely and fraudulently represented to the circuit court in DuPage County that his Mother wanted an order of protection against her son, the Plaintiff herein. Regardless, of what cause of action or label is place on Defendant Naser's conduct pleaded in this Complaint, he cannot be allowed to intentionally make a false statement to a court, to use the judicial process for alternate reasons.

2. The other action pending between the Plaintiff and Defendant herein has NOT failed. *Rustom v. Rustom et al.*, Case No. 17-cv-9061 (N.D. Ill.) ("MRI Litigation"). A

review of its current status will show that there is a Rule 12(b) motion to dismiss pending. Plaintiff's counsel has no doubt that the motion to be denied.

3. Maher's Complaint in this lawsuit is not baseless because in the state court Naser had his Mother's counsel withdraw the petition for order of protection, once it was obvious his Mother will have to either appear before the Judge or be deposed about her relationship with Maher. (Compl. ¶12). Maher is meek and his Mother loves him dearly and would never want an order of protection against him.

4. On January 10, 2019, Defendant Naser filed a motion to dismiss pursuant to Federal Rules of Civil Procedure, Rules 9 & 12(b)(6). (Doc. 11). This Memorandum of Law is in Opposition to Naser Motion to Dismiss.

## STATEMENT OF FACTS
**(These are the facts pleaded the Verified Complaint)**

This is a dispute between two brothers, the older brother, Plaintiff Dr. Maher Rustom, ("Maher") who is and has always been a subject (or citizen) of the country Saudi Arabia, was educated outside the United States and does not speak or write English well. The younger brother, Defendant Dr. Naser Rustom ("Naser") came to the United States in 1984, was educated in this country and became a citizen in the late 1980's. Naser speaks and writes English fluently and has become adapted to the culture, institutions and the norms of this country. (Compl. ¶1)

Defendant Naser fraudulently obtained an order of protection on behalf of Maher's Mother to keep Maher from contacting his Mother, while on a sixty-day visit in the United States. Naser did this to interfere with his Mother being deposed in a pending federal court action against Naser and to pressure Maher to withdraw said action. Naser made false, fraudulent and defamatory statements that Maher was abusive to his Mother

and that Maher's Mother wanted an order of protection to keep Maher away from her. (Compl. ¶2)

Maher's attorneys, in a state court action, filed a motion to depose Maher's Mother and to appoint guardian ad litem to determine whether she wanted the order of protection or whether Naser obtained the order of protection without her consent or knowledge. Before the motion was ruled upon, Naser had his Mother's attorney move for "nonsuit." The state court judge held that since Maher's Mother moved for nonsuit, Maher's motion should be raised in another court, he denied the motion without prejudice and he vacated the order of protection. (Compl. ¶3)

Maher's Mother is an 83-year-old, with disabilities, who is infirm and requires a 24-hour caretaker. (Compl. ¶4)

In March 2018, Maher and his counsel where attempting to make arrangements to depose his Mother in a pending federal court action. However, just before Maher's Mother was to be served with a subpoena to give deposition testimony, which Naser and his attorneys were all aware of, Naser moved his Mother, without her consent, from her home, with her 24-hour caretaker, to an undisclosed location and he prohibited any telephone calls between Maher and his Mother. (Compl. ¶5)

Vivian Khalaf, Maher Mother's personal attorney said to Maher and his attorney that Maher's Mother: "*does not want to see or speak with Maher, until he drops his federal court case against Naser,*" or words to that effect. (Compl. ¶6)

Consequently, Maher sustained great emotional and physical pain and suffering and Maher had a stroke the day of the removal of his Mother from her house. (Compl. ¶7)

Defendant Naser, by removing his Mother from her home and not allowing any contacts with her, interfered with Maher attorney's effort to depose Maher's Mother in a

pending federal court action where Maher is suing Naser, *Rustom v. Rustom* et al., Case No. 17-cv-9061. (Compl. ¶8)

In the state court action where the order of protection was entered, Maher's attorneys moved to depose his mother and appoint guardian ad litem to determine whether Naser removed his Mother from her house against her wishes to avoid deposition in the federal court action and/or to pressure him to settle the pending federal court action. (Compl. ¶9)

Thereafter, before said motion was heard, Naser caused his Mother's counsel to withdraw the state court action by moving for "nonsuit" and thereby vacating the order of protection. (Compl. ¶10)

In a subsequent telephone call between Maher and his Mother, she confirmed to Maher that she never wanted the order of protection and that she repeatedly asked to go back home and see and speak with Maher, but Naser prevented her from doing so since he removed her from her home without her consent on, March 20, 2018. (Compl. ¶11)

The state court judge denied Maher's said motion without prejudice and indicated that the issue of whether there was fraudulent representation by Defendant Naser to obtain the order of protection should be raised in another action. *Elkhadra v. Rustom*, Case No. 2018 OP 000405 (Judge Brian Jacobs, Circuit Court DuPage County, 18th Judicial Circuit) (Compl. ¶12)

Defendants Naser Rustom has a duty to ensure that he makes truthful and accurate representations concerning his 83-year old, infirm Mother, Mrs. Elkhadra. (Compl. ¶2)

Naser breached said duty by presenting to a state court an affidavit or caused such affidavit to be presented, which claimed that his Mother needs and wants an immediate order of protection against Maher on the basis that Maher was abusive to his Mother. (Compl. First Cause of Action ¶3)

4

This statement was not truthful and inaccurate because Mrs. Elkhadra never wanted the order of protection and Maher was never abusive to his Mother. (Compl. ¶4)

The state court relied on Naser's representation, in his capacity as a party of interest in the state court action, to enter an order of protection prohibiting Maher from contacting his Mother. (Compl. First Cause of Action ¶5)

As a result of the order of protection, prohibiting Maher from contacting his mother, Maher had a stroke on the same day his Mother was removed from her house and from his stress and anxiety about his Mother. (Compl. First Cause of Action ¶6)

Defendant Naser Rustom presented to the state court an affidavit from Mrs. Elkhadra claiming she wanted an immediate order of protection. This was a false statement intentionally made to obtain an order of protection. (Compl. Second Cause of Action ¶2) Naser knew that his Mother never wanted the order of protection because this is what she indicated to Maher and it is obvious from the totality of the circumstances. (Compl. Second Cause of Action ¶3)

The state court relied on Naser's claims, as a party of interest, to enter an order of protection against Maher. (Compl. Second Cause of Action ¶4)
As a result of the order of protection, prohibiting Maher from contacting his Mother, Maher had a stroke on the same day Naser removed his Mother from her home. (Compl. Second Cause of Action ¶5)

Maher's Mother, Mrs. Elkhadra's, personal attorney, Vivian Khalaf stated to Maher and his counsel that Maher's Mother: "*does not want to see or speak with Maher, until he drops his federal court case against Naser.*" This is a false statement because when Plaintiff finally was able to contact his Mother she indicated that she never wanted

5

the order of protection and repeatedly asked to go home and to speak with Maher, but Naser refused to allow her. (Compl. Third Cause of Action ¶4)

## **STANDARD OF REVIEW**

Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake." Courts interpret the "circumstances" reference in Rule 9(b) to require plaintiff to plead the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff. See *Windy City Metal Fabricators & Supply, Inc. v. CIT Technical Financing Services, Inc.*, 536 F.3d 663, 669 (7th Cir., 2008); *Ackerman v. Northwestern Mut. Life Ins. Co.,* 172 F.3d 467, 469 (7th Cir., 1999) (Rule 9(b) requires the complaint to set forth "the who, what, where, and when of the alleged fraud"); *Vicom, Inc. v. Harbridge Merchant Services, Inc.,* 20 F.3d 771, 777 (7th Cir., 1994).

A complaint will be dismissed under Rule 12(b)(6) unless it clears two hurdles. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). First, the complaint must contain enough factual information to give the defendant "fair notice" of the claim so that it can prepare its defense. *Reger Dev., LLC v. Nat'l City Bank,* 592 F.3d 759, 764 (7th Cir. 2010) (internal quotation omitted). Second, the complaint must plausibly suggest that the plaintiff has a right to relief, the allegations raising that right above a "speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Facial plausibility exists when the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). All well-pleaded allegations are presumed to be true, and all inferences are read in the light most favorable to the plaintiff. *Lavalais v. Village of Melrose Park,* 734 F.3d 629, 632 (7th Cir.

6

2013). This presumption is not extended to 'legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.' *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013) (quoting *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009)). The complaint must provide a defendant "with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Twombly*, 550 U.S. at 555). "[t]he Rules of Civil Procedure set up a system of notice pleading," under which, "[e]ach defendant is entitled to know what he or she did that is asserted to be wrongful." *Bank of Am., N.A. v. Knight,* 725 F.3d 815, 818 (7th Cir. 2013). The Verified Complaint in this case satisfies the notice pleading requirement.

## ARGUMENT

**A. Plaintiff Maher properly pleaded a claim for negligent misrepresentation.**

Negligent misrepresentation involves the breach of a duty to use care in obtaining and communicating information upon which others may reasonably be expected to rely in the conduct of their affairs. *Zimmerman v. Northfield Real Estate, Inc.,* 156 Ill. App. 3d 154, 510 N.E.2d 409 (1986). The elements needed to sustain a cause of action for negligent misrepresentation include a duty owed by defendant to plaintiff, a breach of such duty, and injury proximately resulting from the breach. *Harkala v. Wildwood Realty, Inc.,* 200 Ill. App. 3d 447, 558 N.E.2d 195 (1990). A misrepresentation can result from the failure to provide adequate information when there is a duty to provide such information, as well as providing information which is false. *Board of Education v. A, C, & S, Inc.,* 131 Ill. 2d 428, 546 N.E.2d 580 (1989).

The Illinois Supreme Court first recognized the tort of negligent misrepresentation in holding a surveyor liable for negligently supplying an incorrect survey. *Rozny v. Marnul,*

7

43 Ill. 2d 54, 68, 250 N.E.2d 656, 663 (1969). The defendant had prepared the survey for a company building a real estate development *Id.* at 57, 250 N.E.2d at 658. The property was purchased by a builder who subsequently erected a house. *Id.* at 57, 250 N.E.2d at 658. A bank received the inaccurate survey when the builder was granted a loan placing a mortgage on the property. *Id.* The defendant claimed that he issued a corrected survey; there was no evidence, however, that the bank or builder ever received it. *Id.* The plaintiffs eventually acquired the defendant's survey from a bank when it assumed the builder's mortgage *Id.* at 58, 250 N.E.2d at 658. The defendant's erroneous survey stated that "this plat of survey carries our absolute guarantee for accuracy, and is issued subject to faithful carrying out of the above and foregoing instructions and conditions before any liability will be assumed on part of the Jens K. Doe survey service." *Id.* at 58-59, 250 N.E.2d 658-59. Relying on the survey, the plaintiff extended a driveway and built a garage that encroached slightly on the adjacent lot *Id.* at 58, 250 N.E.2d at 658 (west edge of garage encroached from two (2) inches to just over a foot onto adjacent lot).

Thus, *Rozny* shows that a negligent misrepresentation cause of action can be pleaded where a defendant makes the misrepresentation to a third party concerning the plaintiff, where the plaintiff is injured. A fraudulent misrepresentation is where the defendant intentionally makes the misrepresentation to a third party, for the purpose of injuring the plaintiff, where the third party relies on said misrepresentation and the reliance injures the plaintiff.

In this case, the Defendant Naser owed a duty to the Plaintiff Maher to accurately represent, or cause to be represented, the facts concerning Maher's relationship with his Mother to the Circuit Court. Naser breached this duty by stating false facts to the Circuit Court, namely:

8

> Naser made false, fraudulent and defamatory statements that Maher was abusive to his Mother and that Maher's Mother wanted an order of protection to keep Maher away from her. (Compl. ¶2)
>
> Naser breached said duty by presenting to a state court an affidavit or caused such affidavit to be presented, which claimed that his Mother needs and wants an immediate order of protection against Maher on the basis that Maher was abusive to his Mother. (Compl., First Cause of Action, ¶3)
>
> This statement was not truthful and inaccurate because Mrs. Elkhadra never wanted the order of protection and Maher was never abusive to his Mother. (Compl., First Cause of Action, ¶4)

Naser's false statement was the proximate cause of Plaintiff's injury, in that, the circuit court entered a temporary order of protection against Maher, where he could not communicate with his Mother directly or indirectly and, "Maher sustained great emotional and physical pain and suffering and Maher had a stroke the day of the removal of his Mother from her house." (Compl. ¶7).

### B. Plaintiff Maher properly pleaded a claim for fraudulent misrepresentation

A claim for negligent misrepresentation has "essentially the same elements [as fraudulent misrepresentation], except that the defendant's mental state is different." *Bd. of Educ. of City of Chicago v. A, C & S, Inc.*, 131 Ill. 2d 428, 452 (1989). In that, the defendant must have intentionally made the false statement that caused the injury. In this case, Naser intentionally made, or caused to be made, the false statements to the circuit court to:

> obtained an order of protection on behalf of Maher's Mother to keep Maher from contacting his Mother, while on a sixty-day visit in the United States. Naser did this to interfere with his Mother being deposed in a pending federal court action against Naser and to pressure Maher to withdraw said action. Naser made false, fraudulent and defamatory statements that Maher was abusive to his Mother and that Maher's Mother wanted an order of protection to keep Maher away from her. (Compl. ¶2)
>
> In March 2018, Maher and his counsel where attempting to make arrangements to depose his Mother in a pending federal court action. However, just before

9

> Maher's Mother was to be served with a subpoena to give deposition testimony, which Naser and his attorneys were all aware of, Naser moved his Mother, without her consent, from her home, with her 24-hour caretaker, to an undisclosed location and he prohibited any telephone calls between Maher and his Mother. (Compl. ¶5)

These statements show that Naser's intentionally made these false statements to prohibit Maher from having his Mother deposed in a pending action and to pressure Maher to withdraw his lawsuit against Naser: "Vivian Khalaf, Maher Mother's personal attorney said to Maher and his attorney that Maher's Mother: '*does not want to see or speak with Maher, until he drops his federal court case against Naser*,' or words to that effect." (Compl. ¶6). In addition, "Defendant Naser, by removing his Mother from her home and not allowing any contacts with her, interfered with Maher attorney's effort to depose Maher's Mother in a pending federal court action where Maher is suing Naser, *Rustom v. Rustom* et al., Case No. 17-cv-9061." (Compl. ¶8).

These pleaded facts show that Naser intentionally made said false statements to the circuit court to interfere with Maher's counsel deposing his Mother for an action against Naser and to pressure Maher to drop his lawsuit against Naser. The intentional false statements by Naser were the proximate cause of Maher's injury because they resulted in an order of protection against Maher, where he could not communicate with his Mother directly or indirectly and, "Maher sustained great emotional and physical pain and suffering and Maher had a stroke the day of the removal of his Mother from her house." (Compl. ¶7).

Defendant's counsel cannot simply state that the Complaint does not satisfy Rule 9, without explaining how the Complaint is deficient. In that, counsel must state what specific facts or details, which were not pleaded, are needed to further describe the fraud to Rule 9 standard. Defendant made false and fraudulent representation to the circuit

court in DuPage County that his Mother wanted an order of protection against her son, Maher. Whether the allegations made to the circuit court to obtain a temporary order of protection against Maher were false and whether Naser enabled these allegations to be made will be the issue in this Court. Thus, Naser has sufficient notice of what the fraud is about under Rule 9. Moreover, Naser can file a bill of particulars or Interrogatories for further details.

### C. Plaintiff Maher did state a claim for Intentional Infliction of Emotional Distress.

To state a claim for intentional infliction of emotional distress, a complaint must allege "(1) the defendant's conduct was truly extreme and outrageous; (2) the defendant intended to inflict severe emotional distress ...; and (3) the defendant's conduct did in fact cause severe emotional distress." *Richards v. U.S. Steel*, 869 F.3d 557, 566 (7th Cir. 2017). First, for Naser to go to a court and state that his brother was so abusive to his Mother and that his Mother needed an order of protection is not a mere insult. It is outrageous and beyond the bounds of decency. Second, Defendant Naser did intend to inflict severe emotional distress as shown in the previous section on fraudulent representation. Third, Defendant Naser's conduct did cause severe emotional distress by "Maher sustained great emotional and physical pain and suffering and Maher had a stroke the day of the removal of his Mother from her house." (Compl. ¶7).

### D. Plaintiff Maher did state a claim for defamation.

Statements are *per se* defamatory when the defamatory character of the statement is apparent on its face; that is, when the words used are so obviously and materially harmful to the plaintiff that injury to his reputation may be presumed. *Bryson v. News American Publication*, 174 Ill. 2d 77 (1996); *Tuite v. Corbitt,* 224 Ill. 2d 490 (2006). In this case,

11

Naser made the above stated false and defamatory statements to Vivian Khalaf who was not the attorney who represented the Mother in the circuit court. Ms. Khalaf was a third party and not representing any of the parties at that time. (Compl. ¶6). In addition, upon information and believe Naser made these false statements to family members and friends who exact identity will be shown in discovery.

## CONCLUSION

Upon the foregoing, the elements for all the causes of action in the Verified Complaint have been stated and thus, Defendant Naser's motion to dismiss should be denied in its entirety.

February 15, 2019,

/s/M James Salem,
Attorney for Plaintiff
Salem Law Offices
7156 W. 127th Street, B-149
Palos Heights, IL. 60463
Tel. (708) 277-4775
salemlaw@comcast.net

## **CERTIFICATION OF SERVICE**

I, M James Salem, am the attorney for Plaintiff and I hereby certify that I served a true copy of the above Memorandum on all counsels of record by electronic means via the Court's CM/ECF system, on February 15, 2019.

/s/ M James Salem